E-FILED
Monday, 13 May, 2013  09:00:07 AM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| RICHARD SMEGO, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 10-3334 |
| | ) | |
| ARAMARK FOOD SERVICES | ) | |
| CORP., ALFREDA KIBBY, EUGENE | ) | |
| MCADORY, STEVE DREDGE, | ) | |
| and FORREST ASHBY | ) | |
| | ) | |
| Defendants, | ) | |

OPINION

SUE E. MYERSCOUGH, U.S. District Judge.

Plaintiffs, proceeding pro se, are detained in the Rushville Treatment and Detention Center.  Plaintiffs allege that the food served at the Center is not fit for human consumption.  They further allege that the food is improperly stored and is prepared and served under unsanitary conditions.  Plaintiffs also pursue a retaliation claim, but that claim remains undeveloped.

The parties have filed summary judgment motions, focusing primarily on the serving of "mechanically separated chicken" to Plaintiffs.  After reviewing the submissions, the Court concludes that

1

too many questions remain for the Court to determine whether this practice violates Plaintiffs' due process rights to adequate food. Additionally, Plaintiff's other allegations of spoiled and unsanitary food support a due process claim regardless of the mechanically-separated-chicken debate.  These claims will proceed to trial against Defendants Aramark, Dredge, and Ashby.  The current director of the facility will be added in his or her official capacity for purposes of injunctive relief.  Defendants Kibby and McAdory will be dismissed because no evidence suggests that they bear personal responsibility for the claimed constitutional deprivations.  Lastly, Plaintiffs retaliation claims, to the extent they pursue any, will be dismissed.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A movant may demonstrate the absence of a material dispute through specific cites to admissible evidence, or by showing that the nonmovant "cannot produce admissible evidence to support the [material]  fact."  Fed. R. Civ. P. 56(c)(B).  If the movant clears this hurdle, the nonmovant may not simply rest on his or her allegations

2

in the complaint, but instead must point to admissible evidence in the record to show that a genuine dispute exists. Id.; Harvey v. Town of Merrillville, 649 F.3d 526, 529 (7th Cir. 2011). "In a § 1983 case, the plaintiff bears the burden of proof on the constitutional deprivation that underlies the claim, and thus must come forward with sufficient evidence to create genuine issues of material fact to avoid summary judgment." McAllister v. Price, 615 F.3d 877, 881 (7th Cir. 2010). At the summary judgment stage, evidence is viewed in the light most favorable to the nonmovant, with material factual disputes resolved in the nonmovant's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists when a reasonable juror could find for the nonmovant. Id.

## UNDISPUTED FACTS

Plaintiffs have been civilly committed pursuant to the Illinois Sexually Violent Persons Act. This means that each Plaintiff has finished serving his criminal sentence, but, instead of being released, he has been detained indefinitely in a secure DHS facility for treatment because he has been found beyond a reasonable doubt to suffer from a "mental disorder that makes it substantially

3

probable that [he] will engage in acts of sexual violence."  725 ILCS 207/35(d)(1); 725 ILCS 207/5(f).  A detainee under this Act may petition for conditional release annually, but conditional release is granted only if enough progress in treatment has been made that the detainee is no longer substantially probable to engage in acts of sexual violence if on conditional release . . . ."  725 ILCS 207/60.

Plaintiff Smego has been civilly committed to DHS custody since December 2005.  *See* Smego v. Phillips, et al., 09-cv-3177 (Complaint, para. 3, p. 6).  Plaintiffs Hoover and Hyatt have been civilly committed to DHS custody since 2001.  In re Commitment of Hoover, 2011 Ill.App.3d 100488 (3rd Dist)(not reported in N.E.2d); In re the Commitment of Hyatt, 2011 MR 56 (Vermillion County, 4/24/01 order).  The Court was unable to find Plaintiff Schloss' date of commitment to DHS custody.

Plaintiffs reside in the Rushville Treatment and Detention Center in Rushville, Illinois, a facility operated by the Illinois Department of Human Services ("DHS").  Defendant McAdory was the security director at the facility during some of the relevant time frame.  Defendant Alfreda Kibby was the facility's program director

4

during some of the relevant time frame.  Defendant Forrest Ashby was the facility's director until recently.

Defendant Aramark Correctional Services, LLC ("Aramark") provides food service at the facility pursuant to a contract with DHS. That contract requires Aramark to provide daily "three balanced meals" and to "assure meals provide a sufficient variety . . .:  flavor, texture, and color balance; seasonal menus . . .; avoidance of repetitious servings."  (Aramark-IDHS Contract, d/e 422-6, Food Preparation Section, p. 6, paras. 4, 6.)  The contract also requires Aramark to "ensure that all meats meet the USDA specifications and that all raw foods used shall conform to the following specifications: . . . pork and poultry—USDA grade A."  Id. at para. 3.  The contract requires the menus to be reviewed and certified by a registered dietitian and to be "rotated so as to avoid repetition.  Id. at paras. 4, 10.

Defendant Steve Dredge is an Aramark employee, working as a food services supervisor at the facility.  Defendant Dredge does not create the meal plans.  Rushville residents cook, prepare, and serve the food under the supervision of Aramark employees.

5

At the time Plaintiffs filed this Complaint, Aramark was serving "mechanically separated chicken" from boxes labeled "for further processing only."  According to the United States Department of Agriculture, "mechanically separated poultry" is:

> A paste-like and batter-like meat product produced by forcing bones with attached edible meat under high pressure through a sieve or similar device to separate the bone from the edible meat tissue.

(USDA Meat and Poultry Labeling Terms, d/e 420-8, p. 2).  9 C.F.R. Section 381.173(a) similarly describes mechanically separated poultry as "any product resulting from the mechanical separation and removal of most of the bone from attached skeletal muscle and other tissue of poultry carcasses and parts of carcasses that has a paste-like form and consistency, that may or may not contain skin with attached fat . . . ."  Plaintiffs believe that the mechanically separated chicken packaged in boxes marked for further processing only were not fit for human consumption under federal regulations. The box in which the mechanically separated chicken comes in no longer states "for further processing only," but Plaintiffs still maintain that the chicken is not fit for eating, at least not how Defendants prepare it.

The mechanically separated chicken is apparently used as a ground beef substitute at the facility, cooked in water and then used as the sole meat source in meals like spaghetti sauce, biscuits and gravy, meatloaf, tacos, and casseroles.  (Dredge Dep. pp. 18-24.) The mechanically separated chicken is used as the sole meat source in at least six meals a week.  Id. at p. 56.

Defendants McAdory, Kibby, and Ashby (the "DHS Defendants") do not purchase the food, prepare the food, clean the kitchen, or supervise any of these tasks.  The DHS Defendants responded to complaints about the mechanically separated chicken by asking Aramark representatives about the chicken, who then informed the DHS Defendants that the mechanically separated chicken was being used and served properly.

Plaintiffs allege in their First Amended Complaint that Aramark:

    i.    supplies rotten and spoiled foods;

    ii.    supplies mechanically separated chicken;

    iii.    supplies foods that are not meant for human consumption;

    iv.    improperly prepares the food;

v.    improperly stores the food; and

vi.   does not properly supervise the distribution of food.

(First Amended Complaint, d/e 376, II-3.)

## ANALYSIS

The parties agree that the Fourteenth Amendment due process clause governs because Plaintiffs are detainees, not prisoners. However, the parties disagree on further definition of the applicable legal standard.  Understandably so, given that controlling precedent acknowledges that detainees have more constitutional rights than prisoners but typically applies an Eighth Amendment standard anyway.

For example, the Supreme Court stated in <u>Youngberg v. Romeo</u> that "[p]ersons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." 457 U.S. at 322.  <u>Youngberg</u> recognized that the Fourteenth Amendment prohibits all "punishment" without due process, while the Eighth Amendment prohibits only "cruel and unusual punishment."  Consistent with that approach, the Seventh Circuit has stated that "the Fourteenth Amendment right to due process

8

provides at least as much, and probably more, protection against punishment as does the Eighth Amendment's ban on cruel and unusual punishment." Forrest v. Prine, 620 F.3d 739, 744 (7th Cir. 2010). However, "the Supreme Court has not yet determined just how much additional protection the Fourteenth Amendment gives to pretrial detainees." Rice ex rel. Rice v. Correctional Medical Services, 675 F.3d 650, 664 (7th Cir. 2012).

In application, however, the standard is difficult to distinguish from the Eighth Amendment standard. The Seventh Circuit has stated that a conditions-of-confinement claim by an involuntarily committed civil detainee requires an objectively serious deprivation and deliberate indifference by the defendant. Sain v. Wood, 512 F.3d 886, 894 (7th Cir. 2008) (peeling paint, foul odor, no air-conditioning, cockroach infestation and poor ventilation were not objectively serious enough to implicate constitutional rights of civil detainee under Illinois Sexually Violent Persons Act). This appears no different than an Eighth Amendment conditions-of-confinement claim by a prisoner.

Clearly, Plaintiffs have a constitutional right to adequate food prepared in a sanitary manner. Youngberg, 457 U.S. at 315. Also

clear is that, under <u>Sain</u>, Plaintiffs must show an objectively serious deprivation and deliberate indifference.  The Seventh Circuit or the Supreme Court may ultimately determine that a different standard applies, but this Court is bound by <u>Sain.</u>  Yet even with this stringent standard, Defendants Aramark and Dredge have failed to demonstrate the absence of a disputed material fact.

For example, a disputed material fact exists regarding whether the mechanically separated chicken is adequate food, at least as prepared in the manner and frequency by Aramark, regardless of compliance with federal regulations.

Aramark submits affidavits which allow an inference that the mechanically separated chicken provided to Aramark complied with federal regulations at all times and did not present a health hazard for those consuming it.  (Aff. Stillwell, Tyson employee, d/e 420-2; Aff. Dr. Regenstein, 420-3; Aff. Arrasmith, d/e 419-2; Aff. Croegaert, d/e 419-2).  However, the Court agrees with Plaintiffs that the necessary foundation is not established to explain how these affiants know what kind of chicken was provided to the facility.

For example, Mr. Stillwell's affidavit refers to chicken provided to inmates at correctional facilities.  Plaintiffs are not inmates and

10

do not reside in a correctional facility.  Correctional facilities are operated by the Illinois Department of Corrections.  The facility here is operated by the Illinois Department of Human Services.  None of the order forms or invoices for the chicken are attached to Mr. Stillwell's affidavit, nor to any other affidavit.  Nor does the Court see any of the written menu plans or recipes.

As another example, Mr. Arrasmith's affidavit states that the "further processing only" stamp "merely requires food service companies to cook the product in the manner utilized in this case." (Arrasmith Aff. d/e 419-2, para. 15).  Yet Mr. Arrasmith does not detail the cooking manner that was utilized in this case and, thus, does not explain the basis for his conclusion.  *See* Prude v. Clarke, 675 F.3d 732, 734 (7th Cir. 2012)("Even an affidavit from an expert stating after a detailed chemical analysis that "nutriloaf meets all dietary requirements" would be worthless unless the expert knew and stated that nutriloaf invariably was made the same way in the institution.").

Further, aside from the foundation problems and lack of detail in the affidavits, a dispute of material fact exists regarding whether the meals prepared by Aramark, including the mechanically

11

separated chicken, are so unpalatable as to arise to an objectively serious deprivation.   Dr. Regenstein and Dietitian Croegaert aver that the mechanically separated chicken is safe to eat and an adequate protein source, but they do not address Plaintiffs' claims that Plaintiffs feel ill after eating the food.  Plaintiffs testified in their depositions that eating the mechanically separated chicken causes them nausea, diarrhea, gastrointestinal distress, and weight loss (at least as to Plaintiff Schloss).  *See*  Prude v. Clark, 675 F.3d 732, 735 (7th Cir. 2012)("sickening food" which caused "substantial weight loss, vomiting, stomach pains, and maybe an anal fissure . . . would violate the Eighth Amendment.").   Plaintiffs further testified that they are served rotten or dirty vegetables and spoiled milk on a recurrent basis, and sometimes are served food with bugs in it.  (Smego Dep. pp. 10, 41-44;  Schloss Dep. pp. 12, 137-38;  Hyatt Dep. 29-36).  According to Plaintiffs, these are not sporadic or temporary problems, but frequently recurring problems likely to continue for the entire time of their indefinite confinement.  The situation they describe is more than "unpleasant."  *Cf.* Sain, 512 F.3d at 894 (peeling paint, bad odor, cockroaches, and lack of air conditioning were "unpleasant" but did not rise to a constitutional

12

violation).  A rational juror believing Plaintiffs' descriptions could arguably find an objectively serious deprivation.

Contrary inferences do arise in Defendants' favor.  For example, Defendant Hyatt testified that, as a cook, he was instructed to and did cut off the rotten parts of vegetables before serving them.  And Defendant Dredge testified that he as well as the staff eat the same mechanically separated chicken as that served to the residents.  This testimony suggests that Plaintiffs are exaggerating the poor quality of the food.  However, crediting Dredge's testimony over Plaintiffs would essentially require a credibility judgment.

Quoting <u>French v. Owens</u>, 777 F.2d 1250, 1255 (7th Cir. 1983), the Aramark Defendants argue that Plaintiffs' right to a nutritionally adequate diet is "limited to being provided 'nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it.'"  (Aramark Mem. p. 7, d/e 420).  However, <u>French</u> more accurately states that an inmate's right to a "'healthy, habitable environment" . . ."*includes* providing nutritionally adequate food that is prepared and served under conditions which

13

do not present an immediate danger . . . ."  Id. (internal quotations omitted)(emphasis added), *quoting* Ramos v. Lamm, 639 F.2d 559, 570-71 (10th Cir. 1980).  French does not *limit* Plaintiffs' constitutional right to nutritionally adequate food solely to protection from immediate danger.  Food that is so unpalatable as to be inedible, or food that repeatedly causes diarrhea or nausea, presents a substantial risk to a resident's present and future health and well being.  If the meal cannot be eaten as a practical matter, then the meal cannot as a practical matter provide adequate nutrition.  The Court agrees with Plaintiffs that "the food Aramark serves Plaintiffs cannot be so bad as to amount to punishment." (Plaintiff's Resp., p. 10.); *see, e.g.,* Prude v. Clarke, 675 F.3d 732, (7th Cir. 2012)("Nutriloaf (also spelled 'nutraloaf') is a bad-tasting food given to prisoners as a form of punishment . . . .").

A rational juror could also conclude that Defendants Aramark and Dredge have been deliberately indifferent, if Plaintiffs' description of the food is accepted by the jury.  Plaintiffs clearly made it known to Dredge and Aramark that Plaintiffs' considered the food intolerable, but nothing was done.  Rice v. Correctional Medical Services, 675 F.3d 650, 665 (7th Cir. 2012)("An official is deliberately

14

indifferent when he is subjectively aware of the condition or danger complained of, but consciously disregards it.").  The contract between Aramark and DHS, while not setting the constitutional standard, is relevant to show knowledge by Aramark and Dredge of their duties to provide adequate food and knowledge of their voluntarily undertaking to provide adequate food.  Therefore the contract could be relevant to show deliberate indifference.  *See, e.g.,* Woodward v. Correctional Medical Services, 368 F.3d 917 (7th Cir. 2004)(private contractor's violations of own written policies was "relevant circumstantial evidence to show [ ] knowledge and state of mind.").

Finding deliberate indifference by Defendant Dredge is more difficult because Dredge arguably had no power to change the menu plan or recipes.  However, a rational juror could find that Dredge allowed the preparation, storage, and serving of food in an unsanitary manner, if Plaintiffs' testimony is believed.  Additionally, the Court cannot rule out on this record that Dredge might have some influence in changing the menu composition, ingredients, and recipes.

Evidence of personal responsibility by the IDOC Defendants is difficult to discern.  No plausible inference of personal responsibility arises against Defendants Kibby and McAdory.  Nothing suggests that they had power over the menus, meal preparation, meal delivery, or sanitation practices.

However, Defendant Ashby, the Director during much of the relevant time, might be considered personally responsible, given that he was made aware of the problems and the contract gives the director, or the director's designee, the responsibility of approving the menus.  (Aramark-IDHS contract, d/e 422-6, DHS Responsibilities, para. 1.)  The IDOC Defendants assert that they responded to complaints by obtaining assurances from Aramark that the meals were adequate and safe.  However, if Plaintiffs' description of the food is believed, a rational juror could find that Ashby, even as a layperson, knew that the meals being provided were inadequate.  And, Ashby's daily presence at the facility allows an inference that he was aware of the quality of the meals being provided to the residents.  On this record the Court cannot rule out the possibility that a rational juror could find that Ashby turned a blind eye to the problem.  The current director will be added in his

16

official capacity to the extent Plaintiffs seek injunctive relief.
Defendant Ashby remains as a Defendant in his individual capacity.

Defendants Aramark and Dredge argue that they are not state
actors. The Court disagrees. The Aramark Defendants are state
actors because they have voluntarily assumed the obligation to fulfill
an essential state function: feeding detainees in a state facility.
Rodriguez v. Plymouth Ambulance Serv., 577 F.3d 816, 827 (7th Cir.
2009)(voluntary assumption by private party of state's responsibility
to provide medical care to inmates renders private party a state
actor); Jubeh v. Dart, 2011 WL 6010267 * 2 (N.D. Ill. 2011)("Just as
a private doctor may be held liable for voluntarily assuming the
public function of providing medical services to an inmate, Aramark
has voluntarily assumed the function of providing nutritionally
adequate food to inmate and may be subject to section 1983 liability
. . . .")(collecting cases).

Lastly, the IDOC Defendants claim qualified immunity.
Qualified immunity shields government officials from liability under
Section 1983 "for actions taken while performing discretionary
functions, unless their conduct violates clearly established statutory
or constitutional rights of which a reasonable person would have

17

known." <u>Brokaw v. Mercer County</u>, 235 F.3d 1000, 1022 (7th Cir.2000).  Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law.... If officers of reasonable competence could disagree on the issue [of whether or not an action was constitutional], immunity should be recognized." <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986).

If Plaintiffs' testimony is believed, the meals are often inedible and the conditions under which the food is prepared and stored is unsanitary.  Plaintiffs' right to adequate food and sanitation has long been established, as has the right to be free from deliberate indifference to an objectively serious deprivation. Accordingly, qualified immunity is not appropriate for Defendant Ashby.

 To the extent Plaintiffs argue that a different legal standard applies than deliberate indifference to an objectively serious deprivation, Defendant Ashby *would* be entitled to qualified immunity.  As discussed above, neither the Seventh Circuit nor the Supreme Court has defined what additional constitutional protections are available to civilly committed persons or to pretrial detainees.  The parties might consider proposing a special verdict with particular findings of fact, which, depending on the verdict,

18

might preserve for appellate review the debate over the applicable legal standard.

IT IS ORDERED:

1. Plaintiffs' motion for partial summary judgment is denied (d/e 422).

2. The Aramark Defendants' motion for summary judgment is granted in part and denied in part (d/e 420).  The motion is granted as to the retaliation claim against the Aramark Defendants, to the extent Plaintiffs pursue that claim (d/e 420).  The motion is otherwise denied.

3. The IDOC Defendants' motion for summary judgment is granted in part and denied in part (d/e 419).  The motion is granted as to Defendants Kibby and McAdory.  The motion is granted as to the retaliation claim against the IDOC Defendants, to the extent Plaintiffs pursue that claim.  The motion is denied as to Defendant Ashby on Plaintiffs' remaining claims.

4. The current acting director of the Rushville Treatment and Detention Facility is substituted for Defendant Ashby in his

official capacity pursuant to Fed. R. Civ. P. 25(a).  Defendant

Ashby remains in his individual capacity.

5. The Aramark Defendants' motion to continue the trial date is

granted (d/e 435).

6. The final pretrial conference is rescheduled to Friday, July 26,

2013 at 10:00 a.m.  Counsel shall appear in person before the

Court.  Mr. Brittingham and the SIU law students will not be

able to appear for the final pretrial conference.  Attorney Noll

will appear for Plaintiffs at the final pretrial conference.

7. The jury trial is tentatively rescheduled to Tuesday, August 13,

2013, at 9:00 a.m..  By May 20, 2013, counsel are directed to

inform the Court if an August 13 trial date will work for their

clients and witnesses.

8. The parties are directed to submit an agreed, proposed final

pretrial order at least seven days before the final pretrial

conference. The proposed final pretrial order must include the

names of all witnesses to be called at the trial and must

indicate whether the witness will appear in person or by video

conference.  Nonparty witnesses who are detained will testify

by video.  Other nonparty witnesses may appear by video at the

20

Court's discretion.  The proposed pretrial order must also include the names and addresses of any witnesses for whom trial subpoenas are sought.  The parties are responsible for timely obtaining and serving any necessary subpoenas, as well as providing the necessary witness and mileage fees.  Fed. R. Civ. P. 45.

9. The exhibit section of the proposed final pretrial order must list by number all the exhibits a party may seek to introduce at the trial and give a short description of the exhibit. The parties must prepare their own exhibits for introduction at the trial, marking the exhibits with the same number that is on the list submitted to the Court.  Exhibits that are introduced at trial will be kept in the Court record.  Therefore, the party offering the exhibit is responsible for making a copy of the exhibit to keep for the party's own records.  Additionally, the parties are directed to exchange copies of their marked exhibits at least ten days before the final pretrial conference.  If a party intends to object to the introduction of a proposed exhibit, that party must file an explanation of the grounds for objection at least five business days before the final pretrial conference.

21

Objections will be argued orally at the final pretrial conference. The parties shall bring their marked exhibits to the final pretrial conference in case an objection arises at the conference.

10.     The Court will circulate proposed jury instructions, a statement of the case, and proposed voir dire questions prior to the final pretrial conference, for discussion at the final pretrial conference. Proposed additional/alternate instructions and voir dire questions must be filed five business days before the final pretrial conference. The jury instructions, statement of the case, and voir dire questions will be finalized at the final pretrial conference, to the extent possible.

11.     Motions in limine are to be filed at least five business days before the final pretrial conference, to be argued orally at the final pretrial conference.

12.     **THE CLERK IS DIRECTED to contact the Rushville Treatment and Detention Center to determine the name of the current director or acting director of the facility, add that person as a defendant in his or her official capacity, and show**

**on the docket that the person is represented by Attorney**

**Christopher Higgerson.**

ENTER:  May 13, 2013
FOR THE COURT:


                            **s/Sue E. Myerscough**
                             SUE E. MYERSCOUGH
               UNITED STATES DISTRICT JUDGE